# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY LYNN CULTON, | CV F 03-6446 OWW DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| GAIL LEWIS, WARDEN, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### PROCEDURAL HISTORY[1]

Petitioner was convicted following a jury trial in the Kern County Superior Court of possessing cocaine (Cal. Health & Saf. Code § 11350(a)), and one count of possessing narcotic paraphernalia. (Id. § 11364.) Further, it was found true that Petitioner committed a felony while released on bail (Cal. Pen. Code, § 12022.1.), he had a prior conviction for involuntary manslaughter while using a firearm, (Cal. Pen. Code, §§ 192(b), 12022.5) and three prior convictions for burglary (Cal. Pen. Code, § 450). Petitioner was sentenced to 11 years and four months in state prison.

///

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer to the petition.

1

1   Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth
2   Appellate District. The Court of Appeal affirmed the judgment on April 3, 2002. (Exhibit C,
3   attached to Answer.)
4   Petitioner filed a petition for review with the California Supreme Court. The petition was
5   denied on June 19, 2002. (Exhibit E, attached to Answer.)
6   On October 24, 2002, Petitioner filed a petition for writ of habeas corpus in the Kern
7   County Superior Court. (Exhibit F, attached to Answer.) The petition was denied on November
8   22, 2002. (Exhibit G, attached to Answer.)
9   On December 9, 2002, Petitioner filed a petition for writ of habeas corpus in the
10  California Court of Appeal, Fifth Appellate District. (Exhibit H, attached to Answer.) The
11  petition was denied on January 15, 2003. (Exhibit I, attached to Answer.)
12  On January 27, 2003, Petitioner filed a petition for writ of habeas corpus in the California
13  Supreme Court, which was denied on September 17, 2003. (Exhibits J & K, attached to
14  Answer.)
15  Petitioner filed the instant petition for writ of habeas corpus in this Court on October 16,
16  2003, raising the following four claims for relief: (1) that his due process right was violated by
17  the exclusion of evidence of third-party culpability; (2) that his due process right was violated by
18  the trial court's failure to instruct the jury on third-party culpability; (3) that the evidence was
19  insufficient to support his conviction in count three of possessing rock cocaine; and (4) that his
20  trial counsel was ineffective for failing to investigate third-party culpability and argue the
21  absence of officer safety in the suppression motion relating to counts one and two - the
22  possession of rock cocaine and narcotic paraphernalia. Petition at 5-6.
23  The Court directed Respondent to file a response to the petition on January 30, 2004.
24  Respondent filed a motion to dismiss on April 5, 2004, arguing that the petition was a "mixed"
25  petition and that Claim 4 was unexhausted. On June 2, 2004, the Court issued a recommendation
26  that the motion to dismiss be granted. Petitioner filed objections on June 9, 2004, along with a
27  motion to withdraw the unexhausted claim and proceed with the exhausted claims only.
28  ///

On June 16, 2004, the Court vacated the recommendation of April 5, 2004, granted Petitioner's request to withdraw the unexhausted claim (Claim 4), and recommended that Respondent's motion to dismiss the petition be denied as the petition no longer contained unexhausted claims.

Respondent filed an answer to the petition on October 13, 2004, and Petitioner filed a traverse on November 1, 2004.

## STATEMENT OF FACTS

### October 29, 1999, Incident - Counts 1 and 2

On October 29, 1999, at about 4 a.m., Bakersfield Police Officer Christopher Campbell and his partner officer Tim Brown were driving through the parking lot of the Tropicana Motel when Paula Juarez summoned them to room 111. (RT 30-33; 37-38, 79-80.) Ms. Juarez told the officers that a black male by the name of Donald, who was wanted by the police, had been at the motel several times recently and was likely still in the vicinity. (RT 34-35.) Officer Brown walked through the motel room to an interior courtyard area and officer Campbell drove to the back of the motel. Officer Campbell observed someone matching the description walking away from the motel. (RT 34-36, 80, 90.) After a chase, officers subsequently arrested Donald Seals, who also went by the name of Donald Fields. (RT 34-36.) At around this same time, William Lark Cooper was also arrested on an outstanding warrant. (RT 36-37.) Officers did not find or seize any narcotics or paraphernalia from either male. (RT 40, 58, 80.)

After making the arrests the officers returned to room 111 to ask Ms. Juarez whether the Donald they had arrested was the same Donald she complained about. (RT 37, 91.) Officer Brown knocked on the door and then he and officer Campbell entered the room where they encountered Paula Juarez, Gloria Ortiz and Petitioner. (RT 38-39, 80-81.) Officer Brown conducted a pat-down search of Petitioner and discovered a cylindrical tube of glass, burned at one end, with a Brillo pad stuffed into one end, which he handed to officer Campbell. (RT 39-

///

///

///

41, 43, 81-84.) Officers testified that the pipe was of the type commonly used to ingest cocaine base.[2] (RT 46-47.)

Officer Brown subsequently discovered, in Petitioner's left back pant pocket, a small plastic baggie containing an off-white substance. (RT 47, 62, 85, People's Exhibit 2.) In the front pouch of Petitioner's sweatshirt, officer Brown discovered a large chunk of an off-white chunky substance consistent with rock cocaine base, which he handed to officer Campbell. (RT 86.)

Later, at the police station, officer Campbell weighed the substances. The first item was .4 grams of suspected cocaine and the second was one gram of suspected cocaine. (RT 54-55.) Officer Campbell subsequently placed the seized items in an evidence envelope booked them into the police property room, after writing the name "Donald Fields" on it as the suspect from whom the baggie was taken. (RT 47-48, 50, 63.) At trial, officer Campbell testified that he wrote the wrong name on the baggie, and that the baggie had actually been taken from Petitioner. (RT 50-51.) Later analysis revealed the substances to be 0.28 grams and 0.94 grams of substances containing cocaine base. (RT 147-153.) The examining criminalist was of the opinion the two rocks amounted to a usable quantity of cocaine base. (RT 149-151, 155-156.)

<u>November 1, 1999, Incident - Count 3</u>

On November 1, 1999, Bakersfield Police Officer Joseph Dougherty was patrolling with his partner, officer DeLeon, when they drove into the parking lot of the Tropicana Motel. (RT 95-96, 125-126.) Officer Dougherty observed Petitioner walking on the upstairs tier of the hotel and then down the stairs, looking in the officer's direction. (RT 97, 126.) Petitioner walked down the stairs, looked in the officers' direction and appeared to see them. (RT 98, 127.) When at the bottom of the stairs, Petitioner continued to walk toward the officers until he passed behind, what appeared to be an inoperable red pickup truck that was parked in a stall in the parking lot. (RT 99, 127, 129.) Petitioner dipped his right shoulder, squatted down and then stood up again. (RT 100-101, 134.) Officer Dougherty testified that this was a known area

---

[2] There were no burn marks or cocaine base residue on the pipe and officer Campbell admitted he did not know if the pipe had been used for smoking cocaine. (RT 63-65, 68, 84, 93.)

4

commonly used for drug trafficking, and he thought that Petitioner might have been attempting to dispose of drugs or drug paraphernalia.  (RT 98-101, 129.)

Officer Dougherty parked the patrol car and officer DeLeon made contact with Petitioner. (RT 101-102.)  Petitioner reached into his pocket, and officer DeLeon told him not to do that. (RT 102-103.)  Petitioner indicated that he had a box cutter in his back pocket, officer DeLeon seized it with Petitioner's permission.  (RT 103, 128.)  Officer Dougherty then noticed an open, torn piece of a baggie next to the red pickup truck in the same area where Petitioner had stopped. (RT 104, 135-136.)  Officer DeLeon picked up the baggie, which was between the stairwell and the pickup truck.  (RT 129.)  The baggie contained two white rocks that were believed to be cocaine base.  (RT 104-105.)  The substance was later found to weigh approximately two grams of cocaine.  (RT 141.)  The officers later examined the box cutter and noticed a white powerdy substance on it, which they believed to be cocaine.  (RT 108-110, 132.)  Neither officer observed Petitioner actually holding the cocaine base and did not see him throw it.  (RT 111-112, 128, 133.)  The parties stipulated that no usable fingerprints were found on the baggie seized from the parking lot of the Tropicana Motel on November 1, 1999.[3]  (RT 180.)

A criminalist later examined the substance and determined it to be 1.44 grams of a substance containing cocaine base. (RT 172-173.)  The criminalist was of the opinion that it was a usable amount of cocaine base.  (RT 173-174.)  The criminalist also tested the residue found on the blade of the box-cutter taken from Petitioner and determined that it contained cocaine base, but it was not a usable quantity.  (RT 153-156.)

## DISCUSSION

A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

---

[3] Officer Dougherty admitted that, given the fact that the Tropicana Hotel was in a high crime area and commonly known for drug trafficking, it was possible that the bag of cocaine could have been lying in the parking lot before Petitioner went behind the truck. (RT 113-114.)

5

529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court.  Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations

1  omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

2  While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.  Due Process Violation - Exclusion of Third-Party Culpability Evidence

Petitioner contends that trial court abused its discretion by excluding the evidence of the third-party culpability. Specifically, Petitioner contends that the trial court violated his due process rights because it excluded evidence that the drugs seized from him might have come from Fields or Cooper. (Pet. at 5.)

Although the Supreme Court has not articulated a bright line test for determining when the trial court must allow a defendant to introduce evidence of third-party culpability. The Ninth Circuit has however held that where the proffered evidence simply affords a possible ground of suspicion against a third party and does not directly connect that person with the actual commission of the offense, that evidence may be excluded. See People of Territory of Guam v. Ignacio, 10 F.3d 608, 615 (9th Cir. 1993) (quoting Perry v. Rushen, 713 F.2d 1447, 1449 (9th Cir. 1983).

Petitioner's claim fails. The state courts' determination that the exclusion of evidence that did not directly link a third party to the crime was not contrary to and did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court.

///

///

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

> Contrary to [Petitioner's] contention, the court did not apply the wrong standard. The court properly exercised its discretion under [California] Evidence Code 352. Defense counsel was unable to make an offer of proof linking the third person to the actual perpetration of the crime. Defense counsel's argument that possession of drugs might have motivated Donald Fields to run from police, is only relevant to issues of motive or opportunity. There was no evidence, however, that Fields planted his drugs and paraphernalia on [Petitioner], or asked [Petitioner] to hold them while he attempted to elude the police. Under *Hall*, *supra*, the court made the appropriate inquiries and then properly exercised its discretion in making its ruling.

(Exhibit C, attached to Answer, at 14-15.)[4]

During trial, it was established that officer Campbell mistakenly wrote the name of Donald Fields on the evidence envelope that contained the contraband seized from Petitioner in the motel room. During examination, officer Campbell stated that Fields did not have any drugs or drug paraphernalia on him. (RT 40.)

As noted by the Court of Appeal, and set forth by Respondent, defense counsel attempted to question officer Brown regarding why Fields was arrested:

[DEFENSE COUNSEL]: Now, Officer Brown, the second subject that you were chasing down the street with Officer Campbell who was running from you, did he match the description of the individual that the female in room 111 gave you?

A. She didn't give us a description other than a subject called Donald, a black male, so with that brief, yes, he did.

Q. Oh, so she gave you no physical description.

A. That's correct.

Q. Now, you observed Mr. Fields running and so you decided to go and arrest him?

[PROSECUTOR]: Objection, that's beyond the scope of direct examination of this

---

[4] Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

1  witness.

2  THE COURT: That's overruled.

3  THE WITNESS: I am sorry, I - -

4  [DEFENSE COUNSEL]: You saw this person, this Mr. Fields running so based on that,
5  you decided to go and arrest him?

6  [PROSECUTOR]: Objection, relevant as to the basis of his decision to arrest him.

7  THE COURT: Sustained.

8  [DEFENSE COUNSEL]: What was this person, Mr. Fields, doing that drew your
9  attention?

10 [PROSECUTOR]: Objection, relevance.

11 THE COURT: Sustained.

12 [DEFENSE COUNSEL]: What did you end up arresting Mr. Fields for?

13 [PROSECUTOR]: Objection, beyond the scope of direct, and relevance.

14 THE COURT: I am sustaining it on relevance grounds.

15 [DEFENSE COUNSEL]: Now, Mr. Field's name appears on that evidence envelope,
16 does it not?

17 A. That's correct.

18 Q. Okay. What did you arrest him for?

19 A. He was arrested for interfering and delaying and also providing false information.

20 Q. Okay. So, up until the time that - - the basis for arresting him for interfering or
21 delaying was the fact that he ran away from you; is that correct?

22 [PROSECUTOR]: Objection, relevance.

23 THE COURT: Sustained. [¶] I don't want to hear any more on this general subject matter.

24 [DEFENSE COUNSEL]: Did you have any reason to suspect Mr. Fields of having drugs?

25 [PROSECUTOR]: Objection, relevance.

26 THE COURT: Sustained.

27 [DEFENSE COUNSEL]: Did you talk to Mr. Fields?

28 A. At - - after he had been arrested by the other officers.

9

1  Q. Okay. Did you ask him why he ran?

2  [PROSECUTOR]: Objection, relevance

3  THE COURT: Sustained. [¶] Mr. Hamilton, let me be clear. It doesn't matter; that man is
4  not on trial.

5  [DEFENSE COUNSEL]: Now, isn't it true that you didn't contact [Petitioner] until after
6  you had arrested Mr. Fields?

7  A. That's correct.

8  Q. Now, how about this third person, Mr. Cooper.

9  What was he arrested for?

10  [PROSECUTOR]: Objection, relevance.

11  THE COURT: Sustained.

12 (RT 89-91.)

13  Under California law, "evidence of mere motive or opportunity to commit the crime in
14 another person, without more, will not suffice to raise a reasonable doubt about a defendant's
15 guilt: there must be direct or circumstantial evidence linking the third person to the actual
16 perpetration of the crime." People v. Hall, 41 Cal.3d 826, 833 (1986). California's rule does not
17 offend any fundamental principle of justice or unfairly prevent a defendant from defending
18 against the state's charges. See Perry v. Rushen, 713 F.2d at 1455.

19  In Perry, the Ninth Circuit rejected a claim that the California state trial court violated
20 defendant's right to present a defense and due process rights by excluding evidence that another
21 man of similar appearance raped a woman in the same location one hour before the assault with
22 which the defendant was charged. Defendant sought to prove that both men were of similar
23 weight and height, had distinctively braided hair, and wore brown jackets and blue jeans. Id. at
24 1449. The court held that, absent substantial evidence directly connecting the third party with the
25 actual commission of the offense, the evidence was inadmissible because it simply afforded a
26 ground of suspicion against a third party. Id. The Ninth Circuit found it was "sufficiently
27 collateral and lacking in probity." Id. at 1445.

28 ///

The fact that officer Campbell wrote the wrong name on the contraband evidence seized from Petitioner, was present before the jury. The trial court agreed that the determination of whether the officer made a mistake was an issue for the jury to decide. (RT 164-165.) This was the only piece of evidence that defense counsel had to support his theory that the contraband belonged to Fields. Counsel's argument that possession of drugs might have motivated Fields to run from police, was only relevant to issues of motive or opportunity. There was no evidence that Fields planted his drugs and paraphernalia on Petitioner, or asked Petitioner to hold them while he attempted to elude the police.

Both officers unequivocally testified that the cocaine and narcotic pipe were found on Petitioner. Officer Brown conducted a pat-search of Petitioner and found a glass pipe in his right-rear pant pocket, which Brown handed to Campbell for booking. Brown also found a small plastic baggy containing .28 grams of cocaine base in Petitioner's left-rear pant pocket, and a .94 grams of cocaine base in Petitioner's front sweatshirt pocket, which Brown handed to Campbell for booking into police evidence.

As Respondent submits, there was no link between the seized evidence and Cooper. In fact, defense counsel never argued that Cooper, not Petitioner, was the person from whom the drugs and pipe were found. Indeed, defense counsel conceded that the only evidence supporting a connection between the seized evidence and a third-party was through Field's name on the evidence envelope. (RT 162-163.) However, the testimony unequivocally established that no drugs or paraphernalia were found on Fields at all. (RT 40, 80.) Officer Campbell testified that he made a mistake in writing Field's name, instead of Petitioner's name, on the envelope. (RT 50-51.) Defense counsel was fully capable of and did in fact cross-examine Campbell's credibility at trial. (RT 51.) The jury was aware of Campbell's mistake, that Field's was arrested for resisting arrest and providing false information to a police officer, and Cooper was arrested for an outstanding warrant. (RT 36-37.)

Any evidence that Petitioner wished to submit before the jury merely went to potential "motive or opportunity" and did not represent "direct or circumstantial" evidence of the charged offenses. Other than Field's name on the envelope, Petitioner offered nothing more to link Fields

to the crimes.  Therefore, it cannot be said that Petitioner's due process rights were violated by the exclusion of any third-party culpability evidence.

In his traverse, Petitioner claims that the trial court incorrectly applied the California's Supreme Court's ruling in Hall, by requiring an initial threshold showing that the evidence was admissible.  Petitioner contends that Hall stands for the proposition that third-party culpability evidence must always be admitted.  Petitioner is mistaken.  In Hall, the California Supreme Court held that "evidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime."[5] People v. Hall, 41 Cal.3d at 826.  As previously stated, the trial court's exclusion of the proffered evidence was based on the fact that counsel had not submitted an offer of proof of any direct or circumstantial evidence linking either Fields or Cooper to possession of the drugs.  Petitioner's contention to the contrary is rejected.  Accordingly, the claim must be denied.

D.     Due Process Violation - Failure to Sua Sponte Instruct on Third-Party Culpability

Petitioner contends that the trial court erred by failing to sua sponte instruct the jury on a third-party culpability defense.

A Petitioner whose claim involves the *omission* of an instruction "bears an especially heavy burden," because an omission is less likely to be prejudicial than a misstatement of the law.  Reynolds v. Maddock, 1999 WL 354366, *3 (N.D. Cal. 1999).  To demonstrate that the omission of the jury instruction was a constitutional violation, Petitioner must demonstrate that the omission "so infected the entire trial that the resulting conviction violates due process."  Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  A state trial court's failure to give an instruction must render the trial fundamentally unfair.  See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).

Whether the absence of a particular instruction violates the Constitution will depend upon the evidence in the case and the overall instructions given to the jury.  Duckett v. Godinez, 67

---

[5] The court also stated that the evidence was subject to California Evidence Code § 352.

12

F.3d 734, 745 (9th Cir. 1995). The court must examine the record to determine what instructions were given, what instructions were refused, and whether the given instructions adequately embodied the defendant's theory. See United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979).

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

> [A]ny failure to instruct on the theory of third-party culpability was harmless. The jury was instructed pursuant to CALJIC No. 2.90, that the prosecutor had to prove defendant's guilt beyond a reasonable doubt. Defense counsel argued this theory to the jury which rejected it. It is not reasonably probable defendant would have received a more favorable result had the court given an instruction on third-party culpability.

(Exhibit C, attached to Answer, at 16.)

As stated above under section C, the evidence at trial did not establish third-party culpability. Rather, the evidence established that the cocaine and pipe were found on Petitioner's person, and beyond officer Campbell's admitted mistake of placing the wrong name on the evidence when submitted to the property room, there was no evidence presented to support Petitioner's theory that either Cooper or Fields possessed the cocaine and pipe. Defense counsel did not make an offer of proof at trial regarding the relevancy of the questioning regarding the basis of the officer's arrest of Fields. (RT 161-162.) Counsel subsequently offered that the relevancy was to support Petitioner's defense theory that Fields, not Petitioner, was the person from whom the drugs had been seized. (RT 162.) The court noted "this is the first time I've heard of that defense." The court responded that counsel still had not submitted a sufficient offer of proof, but had merely disclosed his defense theory. (Id.) Defense counsel conceded the only evidence supporting the theory was the fact that Donald Field's name was on the envelope. (RT 163.) The court noted the only evidence thus far was that the drugs and paraphernalia were seized from Petitioner's person. The following exchange then occurred:

> [DEFENSE COUNSEL]: Well, that's correct. What I wanted to get into was whether or not there was any indicia of this person possessing drugs, and that somehow not being reflected in the police report or being overlooked by the officers for whatever reason.
> [THE COURT]: Well, that's not what you asked, and that's not what you are asking me to permit you to ask. You have - let me put it this way: At this point, going into why the officers arrested or failed to arrest, whatever your theory might be, persons other than [Petitioner], that evening, strikes me as irrelevant.

13

> But even if it is somehow relevant, I do see it as collateral, and the fact that we are spending more time now dealing with it tells me how collateral it is, and why it would involve an undue consumption of time.[6]
>
> The officers' performance in the field is not an issue that is going to this jury. I do agree that – whether the officers made a mistake or not is a jury issue. All right.

(RT 164-65.)

Although during closing argument, defense counsel argued that Fields may have possessed the cocaine and pipe, as previously stated, there was no direct or circumstantial evidence linking Fields to the actual perpetration of the crime. Counsel's argument was based on the officer's mistake: "Could [the officers] have mistakenly recalled [the contraband] as coming from Mr. Culton, instead of Mr. Fields?" (RT 220-21.) The issue at trial was mainly based on officer credibility and it was apparent in the prosecutor's rebuttal argument to the jury: "I am going to ask you to reject completely [Petitioner's] argument about how somehow the officers forgot who they took the drugs from on October 29th, because Officer Campbell made a mistake about the name he wrote on the envelope." (RT 229.) The jury was properly instructed on determining credibility issues, including the believability of witnesses (RT 197), discrepancies in testimony (RT 198), willfully false witnesses (RT 198), and weighing of any conflicting testimony. (RT 198-99.)

In his traverse, Petitioner contends that the absence of the third-party culpability instruction would lead the jury to believe that Petitioner bore the burden of proving third-party liability beyond a reasonable doubt. Petitioner's contention lacks merit. The jury was instructed that the burden of proof on the prosecution to prove guilt beyond a reasonable doubt. (RT 190-94.) The instruction informed the jury that it had to acquit if, after considering all the evidence, it had a reasonable doubt whether Petitioner possessed the contraband. The trial court further instructed that Petitioner's failure to explain evidence against him did not relieve the prosecution of its burden of proof. (RT 196.) The instructions viewed as a whole demonstrate there is no

---

[6] As Respondent submits, the matter was collateral because testimony was already presented on why Fields and Cooper were arrested: Fields was arrested for resisting arrest and providing false information, and Cooper was arrested for an outstanding warrant. (RT 36-37.)

"reasonable likelihood" that the jury applied the instructions in a way which prevented consideration of a defense theory that Fields or Cooper possessed the contraband. The jury was free to accept or reject counsel's unsupported argument that Fields possessed the contraband. As such, it simply cannot be said that the trial court erred in failing to sua sponte instruct the jury on third-party culpability.

E.      Insufficient Evidence to Support Possession of Rock Cocaine

Petitioner contends that there was insufficient evidence to support his conviction of possession of rock cocaine (count 3).

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

Here, the Court of Appeal found,

> [Petitioner] acted with a consciousness of guilt as soon as he became aware of the police. He then appeared to be disposing of something by the red pickup truck. When [Petitioner] was contacted, the cocaine base was found in the same area. The jury could reasonably infer that [Petitioner] knew he had the cocaine base, and disposed of it when he saw the police. Cocaine base was found where [Petitioner] made his dipping motion, and nearby where DeLeon detained him. These factors are strong circumstantial evidence that [Petitioner] exercised control over the cocaine. In addition, there was evidence that [Petitioner] was in possession of a box cutter which had cocaine residue on it. Although entirely circumstantial, the evidence was clearly sufficient to support the jury's finding.

(Exhibit C, attached to Answer, at 17-18.)

As Respondent submits, in view of the state appellate court's factual findings, along with officers DeLeon and Doughterty's testimony whose credibility was judged by the jury, Petitioner's consciousness of guilt, and the undisputed fact that Petitioner possessed – in his pocket – a box cutter containing cocaine residue (RT 103, 132, 154), it cannot be said that no rational trier of fact could have found proof of guilt beyond a reasonable doubt that Petitioner possessed cocaine. The state courts' determination of this issue was not contrary to, or an

unreasonable application of, clearly established Supreme Court precedent. Accordingly, the petition for writ of habeas corpus must be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 25, 2005**                              **/s/ Dennis L. Beck**
3b142a                                                          UNITED STATES MAGISTRATE JUDGE